(49 App. Div. 184.)

### WENDT v. WALSH et al.

### Appeal of MARREN et al.

(Supreme Court, Appellate Division, First Department.   March 9, 1900.)

1. TRUSTS—DECLARATION—REVERSION.

Where land was conveyed by absolute deed, and the grantee made a declaration that he held the same in trust for W., for his maintenance, and that on the request of W., or his heirs, executors, or assigns, he would convey the property to W., his heirs and assigns, on the death of W. the property passed to his heirs, and did not revert to the grantor.

2. Same—Power of Attorney—Effect.

 An irrevocable and unlimited power of attorney, to take possession of real estate, to sell the same at discretion, to execute sufficient deeds therefor, to lease the same and collect rents, and to execute mortgages or build thereon, was not a conveyance, and hence the land was not subject to execution to satisfy the attorney's debts.

 McLaughlin, J., dissenting.

Appeal from special term.

Action by Herman Wendt against William Walsh and others to foreclose a mortgage. There was a foreclosure sale, leaving a surplus, which was claimed by William S. Wilson and by Mary F. O'Grady and others. From an order confirming a referee's report in favor of William S. Wilson, claimants Mary F. O'Grady and others appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Jas. Kearney and John C. Shaw, for appellants.
J. W. Bryant, for respondent.

PATTERSON, J. This appeal is from a final order directing the distribution of surplus moneys arising from the sale under a judgment in an action for the foreclosure of a mortgage on certain real property in the city of New York, the legal title to which, at the time the action was brought and at the time the judgment was entered, was in one William S. Wilson. The premises, from the sale of which the surplus moneys arose, were, with other lands in the city of New York, conveyed to William S. Wilson by the heirs of one Bridget Walsh. After the title was vested in William S. Wilson, his father, William A. Wilson, brought suit, claiming that all the property embraced in the deed or deeds from the Walsh heirs belonged to him, and that William S. Wilson held the title in trust for him. A compromise of that suit was effected, and it was agreed that William S. Wilson should retain as his own certain of the properties, and that he should convey others, including that in question here, to a trustee to be selected by said William A. Wilson. That agreement was in writing, and was made on the 3d of February, 1897. On the 11th of February, 1897, William S. Wilson executed and delivered to William A. Wilson a power of attorney, by which he made, constituted, and appointed William A. Wilson his attorney to enter into and take possession of certain pieces of real estate, specifically described, including the premises in question, with full authority to sell and convey the same to any person or persons whomsoever for such sums or price and on such terms as should seem fit and proper, and to execute, acknowledge, and deliver good and sufficient deeds of the same, either with or without full covenants of warranty, and to make, execute, acknowledge, and deliver all contracts, writings, and instruments necessary to effectuate and perform the power granted; and, further, until the premises or any part thereof should be sold, to lease the said real estate or any part thereof for the best rent that could be procured, and to ask, demand, recover, receive, and collect all sums of money which should be due or owing to William S. Wilson.

therefor; and, further, to build upon the premises, and to execute
and acknowledge mortgages thereon, and to do and perform every
act and thing necessary in and about the premises as fully as William
S. Wilson could do if personally present, with full power of substi-
tution; and declaring that the power conferred "is a continuing
power, and is irrevocable, unchangeable, unlimited, and not subject
to a countermand or cancellation." On the 1st of March, 1897, a
deed of all the properties described in the power of attorney, includ-
ing the premises out of which the surplus moneys herein arose, was
made and delivered to one Nicholas Bock. It is an indenture be-
tween William S. Wilson, of the city of New York, party of the first
part, and Nicholas Bock, party of the second part. It was executed
by William S. Wilson, by William A. Wilson, his attorney in fact,
and was made and delivered in execution of the authority conferred
by the power of attorney. This deed is absolute on its face. It
was recorded in the office of the register of the city and county of
New York on the 30th day of March, 1897. On the 29th of March,
1897, Nicholas Bock, under his hand and seal, made and executed an
instrument, being a declaration of trust. That instrument recites
that whereas, by indenture of William S. Wilson, bearing date March
10, 1897, the said William S. Wilson granted the property mentioned
in that deed to the said Nicholas Bock, his heirs and assigns—

"Now, know ye all that I, the said Nicholas Bock, do hereby acknowledge,
testify, and declare that the name of me, the said grantee in the said indenture
of even date herewith, * * * is used only in trust for him, the said Wil-
liam A. Wilson, his heirs, administrators, and assigns, and that I hold the
same in trust for said William A. Wilson, for his proper support and mainte-
nance, and the rents and profits thereof are to be paid in equal monthly pay-
ments to said William A. Wilson, and I, my heirs and assigns, etc. [sic],
at all times hereafter, upon the request and demand of said William A. Wil-
son, or his heirs, executors, administrators, or assigns; and shall convey and
assure unto him, the said William A. Wilson, his heirs and assigns, etc. [sic],
by good quitclaim deed, warranting against all claiming under me the premises
mentioned, or any part or parcel thereof, and bargained and sold to me by deed
above mentioned, and all the interest therein that is so conveyed to me, and
any part thereof."

William A. Wilson died in August, 1898. Final judgment in the
foreclosure suit was entered in January, 1899. Bock never conveyed
the premises in question, but retained the record title to the same at
the time the final judgment was entered. He makes no claim to the
surplus. In the year 1890, one Joseph Marren recovered a judgment
against William A. Wilson, upon which an execution was issued and
returned unsatisfied; and the judgment was outstanding and undis-
charged, and a valid lien upon any real estate of which William A.
Wilson may have been seised at the time of his death. William A.
Wilson's heirs were three children,—William S. Wilson, Thomas A.
Wilson, and Mary F. O'Grady. There were three claims to the sur-
plus moneys filed, as follows: First. William S. Wilson claimed
to be entitled to the whole of such surplus, upon the ground that he
was the owner of the equity of redemption of the mortgaged prem-
ises, and the whole thereof, "as the conveyance by deed dated March
1, 1897, made by William S. Wilson, per his attorney, to Nicholas
Bock, * * * was a deed of trust, and which trust having been

fully executed, and its purpose accomplished, such surplus now reverts to him by operation of law." Second. Thomas A. Wilson and Mary Frances O'Grady claimed, as two of the heirs at law of William A. Wilson, that they were · entitled to two-thirds of the surplus moneys arising from the sale under the judgment. That claim was made upon the ground that they were at the time of said sale the owners of the equity of redemption in such mortgaged premises, to the extent of two-thirds thereof. Third. The judgment creditor of William A. Wilson claimed enough of the surplus moneys to satisfy his judgment; the ground of his claim being "that the successive deeds or titles to the said mortgaged premises claimed or held by the defendants, respectively, other than the undersigned, were and are, and each of them is, fraudulent and void as to the creditors of said judgment debtor, William A. Wilson,—particularly the undersigned."

The referee to whom the proceeding was referred reported that William S. Wilson had the first lien upon, and was entitled to the whole of, the surplus money, after the payment of the costs of the reference, and such costs and allowances as might be awarded by the court. He made specific findings of fact, but in those findings there is no reference whatever to the claim of the judgment creditor; and, from all that appears, he did not pass upon the validity of that claim. His report was confirmed by the court. The award of the surplus moneys to William S. Wilson was made, undoubtedly, upon the theory that the legal title to the premises was held by Bock upon an express trust to apply the rents, issues, and profits to the use of William A. Wilson, and that upon the death of William A. Wilson, the purpose of the trust having been fulfilled, the trustee's estate ceased, and the legal title reverted to William S. Wilson.

The deed to Bock, and the instrument executed and delivered by Bock, declaring his relation to the property, are to be construed together, and the terms or conditions upon which the legal title was held by Bock are to be gathered from both instruments. The conveyance to Bock, although made through the medium of an attorney in fact, is William S. Wilson's own deed, and the declaration of trust actually executed and delivered by Bock is in effect to be read into the conveyance made by William S. Wilson to him. William S. Wilson, in the claim to the surplus which he filed, stands upon that declaration of trust, as being the source of his right to the surplus; and, if that declaration is to be construed as constituting only a trust for the maintenance and support of William A. Wilson during his lifetime, then the reversion would be in William S. Wilson, the grantor. But that is not the proper reading of the declaration of trust. It does not give effect to all the terms of the trust. It was intended by William S. Wilson that the whole title and estate should pass from him, to be held upon the precise terms contained in the declaration of trust which he accepted back from his grantee. Those terms were that the rents, issues, and profits should be applied to the support and maintenance of his father until and upon the request of his father, or the heirs, etc., of his father, the property should be conveyed to the father or to his heirs. It was a trust which, as to William S. Wilson, did not terminate with the death of the father. The very

terms of the trust exclude a reversion. If during the lifetime of the father he demanded a conveyance, there was a duty upon the trustee to make the conveyance; but, if the father did not demand it, then there still remained in the trustee the duty to convey the property to the heirs of the father upon the demand of those heirs. Or, in other words, it was a trust constituted for the benefit of the father, for his support and maintenance, the land to be conveyed to him upon his demand; but, if the requirement as to conveyance to the father remained unexecuted, then upon his death the heirs of the father were entitled to the land upon demand, and the trustee was bound to convey. That being impossible by reason of the foreclosure sale, the claim of the heirs is transferred to the surplus moneys. Bock has renounced all claim to that money. We think the referee was in error in determining that the surplus money belonged to William S. Wilson, as being entitled to the reversion, and that he should have found, on the issue between William S. Wilson and the other children of William A. Wilson, that the surplus was distributable among the three children as the owners of the equity of redemption.

As was said before, the claim of Joseph Marren was not specifically passed upon by the referee,—possibly for the reason that there was no evidence to sustain the claim upon the ground on which it is founded. That ground is that the conveyances were fraudulent and void as against the creditors of William A. Wilson. There is nothing in the record to show that the conveyances referred to were made with intent to hinder, delay, or defraud creditors, or to put property which belonged to William A. Wilson beyond the reach of creditors in their efforts to enforce their ordinary legal remedies. The only contention made before us by this judgment creditor is that, by the power of attorney which William S. Wilson gave to his father, he virtually put him in possession of the premises, with the right to dispose of them as he pleased. But no title was conferred by that power of attorney. It was not a conveyance, and did not devolve the ownership of the property on William A. Wilson. It is not contended by this judgment creditor that the trust is merely a passive one. Its active features are set forth in the declaration. As no point is made respecting the nature of the trust, we do not feel called upon to determine it. It is sufficient for us to say that it does not appear upon the face of any of the instruments assailed by the judgment creditor that they were made in fraud, and there is no proof aliunde of fraud.

The order appealed from must be reversed, and an order entered declaring that the three heirs of William A. Wilson are entitled to the surplus moneys in equal proportions, with the costs of the proceedings in the court below and in this court to be paid by William S. Wilson. All concur, except McLAUGHLIN, J., who dissents.

McLAUGHLIN, J. (dissenting). The trust created by the deed to Bock was, as it seems to me, at most, a passive one; and, under the forty-seventh and forty-ninth sections of the statute of uses and trusts, the title, both legal and equitable, was held by William A. Wilson at the time of his death. The forty-ninth section of the statute provides that:

"Every disposition of land, whether by deed or devise, hereafter made, shall be directly to the person in whom the right to the possession and profits shall be intended to be invested, and not to any other to the use of, or in trust for such person, and if made to one or more persons, to the use of or in trust for another, no estate or interest, legal or equitable, shall vest in the trustee."

It is conceded in the prevailing opinion that the deed to Bock, and the instrument executed by him, declaring his relation to the property, are to be construed together, and that the terms or conditions upon which the title was held by Bock are to be gathered from both instruments; that the conveyance to Bock, although made through the medium of an attorney in fact, is William S. Wilson's own deed, and the declaration of trust actually executed and delivered by Bock is, in effect, to be read into the conveyance made by William S. Wilson to him. This is undoubtedly true, but it is also true that these instruments are all of them to be read and construed in connection with the stipulation settling and discontinuing the suit between William A. Wilson and William S. Wilson as to the title to certain property, including that in suit, and which involved the consideration of the conveyance by William S. Wilson to Bock. The stipulation recites:

"For and in consideration of the withdrawal of the case of Wilson vs. Wilson, and the satisfaction and settlement of all disputes between the parties hereto, William S. Wilson, the defendant, hereby agrees to convey and transfer to a trustee to be hereafter selected by said William A. Wilson, by warranty deed, the following property, for the sole use and benefit of the said William A. Wilson, the plaintiff, to wit."

Then follows description of the property in suit.

When these instruments are all read and construed together, they clearly indicate that the parties intended that the conveyance to Bock should be for the benefit of William A. Wilson, and no one else. The stipulation so provides. The power of attorney "is irrevocable, unchangable, unlimited,—not subject to counterclaim or cancellation." The declaratory instrument executed by Bock recites that the deed to him is only in trust for "the said William A. Wilson, his heirs, administrators, and assigns." The conveyance was intended by the parties to be for the benefit of William A. Wilson, and for no one else, and, as it seems to me, the proper construction to be given to it brings the case directly within the provision of the statute referred to. If I am correct in this conclusion, then it necessarily follows that Marren, the judgment creditor, is entitled to be paid out of the surplus moneys a sum sufficient to satisfy his judgment. The legal title to the land, the proceeds of the sale of which are here sought to be distributed, was in William A. Wilson. Marren had a judgment which the statute made a lien upon the land, and, having become a party to this proceeding, he has a legal right to so much of the surplus as is necessary to satisfy the judgment. For these reasons, I am unable to concur in the opinion of Mr. Justice PATTERSON.